The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good afternoon. Mr. Key? Mr. Key, you ready? Yes, Your Honor. Your Honors, may it please the Court, my name is Cecil Key and I'm here on behalf of the appellant, RXD Media, LLC. RXD is here today asking that the Court vacate an injunction entered by the District Court below prohibiting RXD from using its iPad.mobi mark, which it had begun using in 2007. RXD is also requesting that the Court reverse two rulings of summary judgment by the District Court. The first as to the bona fide intent to use a claim by Apple regarding two applications before the Court and still pending before the U.S. Patent and Trademark Office. And the second is the finding of infringement as a result of RXD's updated offering beginning in 2016. Ultimately, however, Your Honor, I have a question. With regard to that 2016, do you dispute that RXD expanded its use of the mark significantly when it launched the iPad today in 2016? We do dispute that, Your Honor. I know you have a question about whether or not the RXD's services were different in 2016, but I think the record shows that RXD... All right. All right, Mr. Key, if you will start your answer. Yes, Your Honor. The question, I believe, was do we dispute that RXD expanded its offering or its use of iPad in 2016? And yes, we do dispute that, Your Honor. First of all, in terms of the scope of services, we cited this in our brief. It's in the record that the services, the cloud services that RXD was advertising in 2016, it was actually offering by 2011, five years later. And then otherwise, it updated its website and it did begin using ipadtoday.com instead of just ipad.mobi. But those were derivatives of the ipad.mobi mark that had been used since 2007. My follow-up question to that would be, was it a natural outgrowth or was it not a natural outgrowth? It was a natural outgrowth, Your Honor, because as I said, the basic services, the ability to keep documents and files and information on a remote server and retrieve it from a device that was already... Beyond that, yes, it was very much a natural outgrowth. And again, the dispute was about the term iPad and it was undisputed, our appellate belief was undisputed, that as between RXD and Apple, RXD was clearly the first to use iPad for these cloud storage services. Mr. Keefe, I have a question and this is regarding the 2003 Fujitsu mark that Apple acquired. How does that factor into our analysis in this case? Does that give Apple an advantage that dates back to the 2003 application and rights that it acquired? It does not, Your Honor, for the following reason. It is true that by acquiring the registration, Apple is entitled to claim priority back to 2003. But that was for a handheld computer device, which is exactly what they began using the mark for in 2010. Now, they have argued that because they purchased that registration, that whatever rights from the registration should be legally imputed to grant them a priority of rights for iPad for cloud storage services. But that can't be done because there's a legal limitation. Apple's rights can only go as far as where somebody else is already occupying the space. And in 2000, at least as early as 2006 in the critical period here, Apple's evidence itself showed that there were multiple parties using iPad, many of them in a software space. In other words, Apple could not legally spread its wings just from this device out to capture anything that related in the computer and software space. So the answer from Appellant's perspective, Your Honor, is no, that does not help Apple here. Mike, I think Mr. Keefe is frozen. All right, Mr. Keefe, I think you were still, you were ending up, I think, with your answer to Judge Keenan's question. Do you have more on that response? I'll add this, Your Honor. I think that the assertion of these other registrations, which is something that the district court relied on very heavily, is addressed squarely in the Converse versus USITC decision that we cited both in the district court and in our briefs, where the rule is made very clear that a second user who's first to register cannot defeat the first user. And in this case, RxD was clearly the first to use for cloud storage services. And again, legally, just because they acquired other registrations doesn't mean that the legal rights can be expanded. There's no factual priorities that they can't expand in cloud storage services, and they can't expand legally because others are already occupying the space. Yes, Your Honor. Judge Floyd, you're muted. I'm sorry. How relevant is it to this case that Apple had a bona fide intent to use the mark for cloud storage services? How relevant is it to this case? We think it is very relevant, Your Honor, because first of all, it's part of the story that in terms of what these parties are intending to do, that actually was a consideration in the likelihood of confusion analysis. But also because RxD's goal here ultimately, Your Honors, is to simply quiet title to its right to use iPad, that term, as a mark for cloud storage services. And those applications that are at issue were cited against it at the trademark office. And we think that it's important just to be sure that we're clear. Apple is the first to use, excuse me, RxD is the first to use. Apple didn't have an intent to use. And if we're going to truly sort of quiet the title there, we think the bona fide intent to use is an important component of the case and something the jury should be entitled to hear. Okay, but Mr. Key, what evidence did you present to show that Apple did not have a bona fide intent to use the services for which it applied? Yes. Where is the evidence in the record? And why doesn't that matter, the lack of evidence on that subject? Well, there actually was not a lack of evidence, Your Honor. We presented evidence that showed the following. The first indication, or the only indication from any business decision maker at Apple about using iPad was in 2006, there was an instruction set to control it for the slate, which is the tablet. But Apple didn't use in 2006, didn't use in 2007, didn't use in 2008 or 2009. All that happened was in 2009, Apple began filing a large amount of trademark and service mark applications claiming a whole raft of goods and services. However, as their trademark attorney testified, that was because they wanted to protect the quote-unquote ecosystem of products and services. Well, that would suggest maybe that they have to have exclusivity across that market, but it doesn't suggest that they have a firm intent, which is what the law requires. And in fact, Your Honor, if you'll take a close look at the Rolex case on which the district court relied, you'll see that the facts are actually better in the Rolex case and summary judgment was denied. In that case, there was evidence that the applicant was already using the mark for other goods and services. Here, there's a conspicuous lack of documentation, and the Apple was never using the mark before. But those other facts that I mentioned, Your Honor, they were before the district court, and I can get the appendix for you, but the point is that they're not in the opinion. The district court ignored them, and that's fundamentally a problem we have throughout this case, is that we feel as though there's many facts and the law that was ignored, and had they been heeded, then the result would have been quite different. Okay, let me ask you just one more question, and then I'll quiet down for a while. What about your inconsistent positions on likelihood of confusion? You took one position before the TTAB, and then in the district court, your position essentially did a 180. How do you reconcile those differences? Thank you, Your Honor. Quite simply, the position before the TTAB still is that there will be a likelihood of confusion if Apple starts offering iPad-branded cloud storage services, which to our knowledge, it is not doing. We are not taking the position that there is a likelihood of confusion when Apple is using for its tablet, and RxD uses for its cloud storage services. Our position is that the marketplace, the consumers will know we're not Apple, we're not offering Apple-branded products or services, and we believe that the consuming public will recognize that Apple is using iPad for a device, and it uses iCloud or other marks for other products and services, such as cloud storage. So we square the circle, Your Honor, by saying that the point where confusion will happen will be with cloud storage services, which Apple is now offering under the iPad brand. Thank you. It's pretty clear that Apple didn't begin using iPad for any purpose until 2010, and then it was merely descriptive and had to acquire secondary meaning, which it couldn't do until years later. And there's no evidence in the record that there was any confusion as to iPad.mobi. The survey expert, and the survey is something that the district court relied on quite heavily, didn't even test iPad.mobi. She said that it was a different mark and treated it differently. Then the district court found that iPad.mobi is a separate mark. Again, that's in 1401 to 1407 in the appendix of the district court's opinion. So the law and the facts, we see no basis or reason for RxD to be enjoined from using iPad.mobi, which it was doing since 2007, with having conflict with anyone, as far as we can tell. I want to speak just briefly to the bona fide intent to use. I think, as we mentioned, your honors, that there were facts that the district court ignored, but we would commend to the court looking at Rolex's decision, because that case actually had better facts than Apple can present, and it was still found to be a question of fact for the jury. The same thing in the N. Z. Berger decision was cited by the district court, where it was acknowledged that the burden of proof is not heavy, but you must show that you've got a firm intent to use the mark and not just reserve your rights. We think under those decisions, under the law, that there's a question of fact that the jury should be allowed to decide. On the final issue, your honor, the likelihood of confusion, we'll note two points. The first of which is that, as this court has found in other cases, such as the, excuse me, a case cited a couple of years ago by the Walmart case, that if there's a question as to the conceptual structure of the case, it's not a question of fact. It's a question of strength of the mark, and if there's a question which is weakened by the fact that multi-party users are the same mark, that can create a question of fact that needs to be presented to the jury, and we think that's exactly the case here. Once you look at this case from the proper perspective, the problem for the district court is rather than looking at the state of the market when the parties enter, which is 2007 for RXD and 2010 for Apple, the district court started in 2019 after the fact, and we think that was fundamentally wrong. As a result, we think that the likelihood of confusion and the survey results, which I know that were relied on heavily by the court, the district court, what they show is confusion generally, such as in the Lange decision that goes back to the 80s, where what we believe, that showed only that the consumers were confused as to who had prior rights, and obviously the survey didn't test that. The survey just said, hey, who do you think these are, and some of the results were these parties thought that RXD was affiliated with Amazon or Google or Microsoft because they're large tech companies and the website seemed to look professional. We think that these are questions that this suite of facts should be presented to a jury, properly instructed on the law, they represent a cross-section of the modern consumer base, and let them make a decision. Look at the survey evidence, of course, but look at all the other facts to ask the questions of how would your opinion change if you knew that RXD was first, or how would your opinion change if you knew that Apple was never the first or only party to use iPad, and that it in fact uses other marks for its cloud storage services. Your honors, I believe I'm showing that I'm out of time, although I'm having trouble discerning, but I have some further questions I can reserve for the rest of my time for rebuttal. Thank you, Mr. Key. Ms. Sandali. Thank you, your honor. I hope you can hear me. I'm Dale Sandali, counsel for Apple Inc. and IP Application Development, LLC. I'm going to try my best to simplify matters. Affirmance is proper for four main reasons. First, contrary to the picture that RXD paints, Apple is the first user of iPad. Second, the relevant undisputed facts show that RXD's use of iPad for cloud storage services causes confusion, as the district court properly found. Third, once liability was established on summary judgment, the district court did not abuse its discretion in issuing an injunction keeping iPad, RXD, a safe distance from the margin to stop it from using iPad or something colorably similar to it, whether it was with i.mobi or any other top-level domain name. And third, RXD can't meet its burden of establishing that Apple lacked a bona fide intent to use iPad for the services in the two pending iPad applications. And here I just want to make one brief comment directed to a question to the court. The court asked Mr. Key what the significance is of the intent to use to the summary judgment finding on liability. And the answer to that question is zero, because we are not suing on the still pending applications that are the subject of the bona fide intent to use challenge. We are suing on a host of other registered common law rights to iPad and iPod. So that is a separate discussion that doesn't affect summary judgment or the scope of the injunction. So let's turn first to the issue, the converse issue, the issue of use and the significance any of 2007. RXD seems to argue in its brief and before you that it was the first user of the iPad mark because it used it in connection with the iPad mobi website. And it seems to argue that because of that Apple can't enforce against it because it's the prior user citing converse. But RXD is wrong for two reasons. The first fatal flaw in RXD's argument is that unlike the situation in converse, Apple did have trademark rights prior to RXD's first use in September of 2007. With regard to the iPad mark itself, Apple had the 575 registration that it acquired from Fujitsu that it stands in the shoes of, which had a first use date of January 8, 2002. As converse itself made clear, citing the Lanham Act, there's a presumption that a mark has secondary meaning after five years of substantially exclusive and continuous use. And here is the first use was January 8, 2002. After five years, January 8, 2007, there would have been a presumption of secondary meaning. The key thing is RXD has never challenged the validity of the Fujitsu registration, has never challenged that it lacked secondary meaning. It's waived those arguments. Moreover, we're not just suing on iPad, we're also suing on our iPod registrations. And the district court also found those infringed. And with regard to the iPod mark, Apple had three registrations with registration dates pre-September 2007, six others with priority dates before them. Again, RXD doesn't challenge the validity of any of those registrations either. But in any case, both of those things take them completely out of the box of construction. But the second fatal flaw goes to some other questions. Sorry, Your Honor. As to the point about iPod, if we were to conclude that RXD did not infringe on Apple's iPod mark, can we still affirm the district court's injunction? Yes, Your Honor, because most of the district court's findings, frankly, focus more on iPad. They argued both. I don't think there's a distinction. They didn't proper, in our view, evidence indicating a difference between iPod or iPad. But even if we just won on iPad, which obviously we think we should, under the idea of safe distance from the margin and the traditional procedure in trademark cases, that you're not supposed to use a confusingly similar mark, iPod would certainly fit that definition. And again, the goal of trademark law is to avoid consumer confusion. And that's one of the things that the district court noted in its injunction decision, that the public interest warrants the injunction to prevent 27% of the consumers from looking at the iPadtoday.com website and thinking that it came from Apple. I note that Mr. Key said that, well, you know, consumers, the marketplace knows that they're not Apple, but that's not what the evidence indicated. And they certainly did not put in a consumer survey indicating that. But going back to what I was saying about the first use, the second fatal flaw in their argument is that it ignores that Apple is not simply on the 2007 iPad Mobi use. It's suing on the iPad today for cloud storage that, as I think the court intimated, radically changed the look of the website from 2007. As we explain on pages 34 and 35 of our brief, even if RxD had been the first user, which it isn't, because it changed and expanded its use over time, and Apple, again, pretending that Fujitsu didn't exist, had developed strong rights to its famous iPad mark in 2010, that alone would have been enough to stop them from its expanded use. McCarthy talks about this, and Patsy's and BorgWarner cases talk about this. So the arguments on the 2007 use simply are not available. So now let's go to the issue, if it's okay with the court, of likelihood of confusion. Here, the district court found the evidence of consumer confusion was overwhelming. In particular, the district court found that each of the likelihood of confusion factors favored either weighed in Apple's favor or were neutral. None favored RxD. Significantly, in its opening brief, RxD did not even address the district court's findings as to five of the nine factors. Similarity of the mark, similarity of the facilities, similarity of the advertising, quality of the products, or the sophistication of the consumers. So RxD has waived argument with regard to them. With regard to the remaining four factors that RxD did address, the undisputed evidence of the record confirms the likelihood. First, the strength of the mark factor favors Apple. The district court correctly found that the mark is undeniably strong. As we put in the record, both iPod and iPad have become major sensations. Tremendous undisputed elicited evidence of that in sales, millions of devices. Councilman, that's your question. I'm sure the market in terms of surveys, the public would say that. But isn't that because it's really associated with a product and not really a company, Apple as a whole? The iPad is associated with the things. Almost like people say, I don't want to name other companies, but some people don't realize that, for example, even Escalator. They think Escalator is a product name. It's trademarked. It's really moving stairway is generically what it is. But it really, and you're saying that we control by that because we are known by that product. Then we control the whole ecosystem, if you will, of everything that's done. Even though we may or may not have evidence, a intent to use it that broad. Is that your position? As a matter of fact, that could be found? No, your honor. No, your honor. Go ahead. I'm trying not to speak over you. It's hard to. Go ahead. Okay. I think that there's two things that are being possibly conflated here. The strength of the mark factor just talks about how strong the mark is. Because the law is well settled that a stronger mark, like Coca-Cola, gets a broader scope of production than a weaker mark that people may not have heard of. The question that your honor is going to more relates to the proximity of the services factor. Well, how similar do they have to be? And Apple certainly does not have rights to everything that might say iPad or iPod. But when they are closely related and complementary goods, the law is clear, as this court's decision and concept says, that that could lead to a likelihood of confusion. In other words, let's pretend Coca-Cola didn't make T-shirts. But if Coca-Cola had a famous mark and someone came out with its logo on a T-shirt, someone might think, oh, this is related to Coca-Cola, even if Coca-Cola hadn't at that point even made T-shirts. What matters is how, and those would be an example of goods that are very unrelated. What's relevant here from a proximity point of view is that the goods and services are extremely complementary. And that is the concept case in this circuit says complementary goods or services are particularly vulnerable to confusion. And I think it's very persuasive, obviously not binding, but there's a great TTAB decision that we cite in our briefs, Enrique Campagne International. And that talks about how when consumers have a hardware device, it needs to run software and software needs to run on hardware. And so there's an interrelatedness of software and hardware. And here, our point is simply that this is a, that they're interrelated enough to cause confusion. If someone, if RSD was using iPad for, I don't know, a drum set or an apartment building, here's my pad or something like that, maybe consumers wouldn't be confused. But when they have a website for cloud storage services in the form that they did, that's a different story. And in fact, their own 30B6 witnesses, as we discussed on page 51 of our brief, admitted that RSD's cloud services can be used with Apple's devices. And it's natural for companies to sell tablet devices like Apple to also offer cloud storage services. And they agreed that Google, Microsoft, and Acer were examples of that. I think, though, that one of the key things in trademark cases, I mean, ultimately, the Sara Lee factors are supposed to assess likelihood of confusion. And actual confusion is a key thing to consider in assessing actual confusion. And I think that this is a striking case, because here, Apple put in a survey showing 27% of the people are confused, noting that was well above the circuit's 10 to 12% threshold for confusion. Their own expert admitted that the Jay survey was well executed, this is in our brief at 56, that Dr. Jay was a super harassment and had no criticism of any particular aspect of the survey. RSD did not put in a survey showing a lack of confusion. It seemed to me the way you define complimentary is co-extensive with anything related to computers. Is that right? I mean, the examples you gave, they were far from a drum set, but it was complimentary as anything that's related to a computer. Is that right? Not necessarily, Your Honor. Can you give an example where it would not be complimentary under your definition, but still be in the sphere of computer related? You know, the thing about trademark laws, you have to have it in the actual circumstance and test. Wait a minute, you want us to rely upon the surveys and what lay people think, which is very important. You're right, we do have sort of metrics as to how much confusion, but you said it has to be in a condom. We're talking about it. When I asked you about that, you said it had to be complimentary. But then you seem that that means anything related to a computer that you, because you have a registration and you sort of control the whole ecosphere, everything, right? So I'm just trying to find out from a theoretical standpoint, can you name anything they could engage in related to a computer that wouldn't fit into your definition of prohibited because it's complimentary? Well, it would depend on the specific nature. And to answer your question, there could be cases for phones, there could be wires, there could be adapters, there could be charger devices. You know, there could be a host of different things related to computers that may not cause confusion. I'm not arguing here that everything related to computers would cause confusion. That would be overbroad. All we're saying is in this particular case, their use of iPadtoday.com on that website leads to consumer confusion. And that's what we're seeing. While we are on these particular facts, the way this case is decided, it will have impact in trademark litigation much broader than this case. So the way you prevail or don't prevail in this case is very important to the whole jurisprudence. So that's what I'm talking about. It's not just this case. But you seem to be suggesting that, okay, we had a 575 registration back in 2003. We weren't involving cloud storage. We're an iPad. But once we find out and we want to go there, then we can sort of brush aside everybody else who was actually there and use it because we can say we had an intent to use this theoretically or whatever. And you say there's no factual question in there at all. It's a matter of law that we can rely on surveys and your broad assertion that in the commerce, intent to use it in commerce means whatever we might decide to do in our product line in the future. Is there any end to your position? Our position is actually very limited, Your Honor. Again, we're not talking about our intent. We're talking about the actual rights that we have. Again, the pending registrations are irrelevant to our affirmative claim, which is based on existing registrations and rights. And you look at the seven factors and you decide, the nine factors, whether there's a likelihood of confusion. And their burden under Celotex is to come forward with evidence indicating that there would be a likelihood of confusion. And to be clear, we don't even have to, as Synergistic indicates, win all the factors. Your Honor could certainly write an opinion saying they have not, we suggest, that they have not met their better burden of establishing that there's a likelihood of confusion and say, but this is not to say that all uses in the computer space would necessarily fit this. But we're only suing over this one fact pattern. And also, to be clear, I think that it's been lost that the district court also noted that RFC, when it began using iPad initially in 2007, acted in bad faith. It was already aware of iPod. It could have looked up, had it done its trademark search, which it did not do, that there was a few kids who already had a registration application pending for iPad. Moreover, as in the record in our brief, uncontested, that their own principle was advised in forums, you should not pick iPad. This is clear trademark infringement. This is a real disaster. But they did it anyway, in our view, in an intent not to be the first comer, but to take advantage of that first comer. And this is not an entity that deserves that. I don't know of any case that suggests that it would. I realize I'm out of time. If there are no further questions, I'll stop talking. Thank you, counsel. Mr. Key, you have some time. Yes, thank you, Your Honor. So let me address these points. Let me start by working backwards. My esteemed colleague said she's not aware of any case in which using a TLD would make a difference. I am. It's Booking.com. It's from the Supreme Court just a few months ago. In fact, that was one of the basis for the reasoning in that case. Secondly, Your Honor, the argument that this falls outside the scope of converse is not true. If Your Honors take a look at the appendix at 1398 and the Trademark Trial and Appeal Board decision 2018WL1027859. It was undisputed that Apple's iPad mark, at least as applied to cloud storage services, was merely descriptive at the time that it was adopted. And under the converse decision, what that means is you've got to stop and look and say, okay, when did secondary meaning attach? And in this case, you do not get to automatically go from goods to services or vice versa. You've got to establish, did you obtain secondary meaning and when did it attach? There's no evidence of that at all in the record, at least in the best you might say is 2012. That's when the Trademark Office approved these applications for publication. That's five years after RxD was already using them. So we completely disagree that this is outside the scope of the converse decision. The question about the bona fide intent for use seems relevant. I'll just simply say that we're also challenging those applications as part of the case below. That would be a basis for invalidating those applications. We think it's relevant for that separate reason. And then Ms. Sindali mentioned that it's RxD's burden to come forward with evidence and likely confusion, etc. We did. The problem is the district court ignored it. Now the undisputed facts are that RxD began using iPad in 2007. Apple did not begin using until 2010. Apple's market was merely descriptive of again using. That's an undisputed fact. Apple was neither the first party or the only party to be using iPad when it came into the market in 2010. Mr. Key, how does it factor in, if at all, the fact that RxD really was not a commercial success with regard to its venture and this involved the use of a descriptive mark? How does that factor in? I haven't heard you all talk about that. I'm just wondering if it got lost in the analysis. No. That's an excellent question, Your Honor. It factors in the following way. The question that the district court's decision raises is whether or not a small and admittedly very modest company like RxD has the same rights under the trademark laws as very large companies such as Apple. We believe that the way that the decision turned out, the answer would be no, and that is something that needs to be corrected. Now the fact that RxD was not successful, the fact that the court found that it was merely descriptive when it started using, that may mean that RxD has limitations on asserting exclusive rights against others. It does not mean that other companies assert rights against RxD. That's the point of the supplemental register, for example. Again, something that's addressed in the Booking.com case from the Supreme Court. From a defensive perspective, RxD cannot be pushed off simply because it's small. There's nothing in the law that says that. The law is supposed to apply equally, but if the question is going to be you need to get a bunch of registrations, which is what the district court relied on more than once, even companies' orders of magnitude greater in size than RxD are not going to be able to keep up with Apple's registration procedures and process. That's why the issue that arose in the Congress case is you've got to look past the registrations. You've got to look at what the market conditions were. That tells you what the rights are. That has been repeated again in the Booking.com case, one of the things the Supreme Court noted. If you've got concurrent users, it's perfectly reasonable to assume that consumers can tell one mark from the other. We're not here saying, we strongly believe that a jury will be able to say RxD is not out, but can tell the difference. That's all we're asking is the chance to take that in front of the jury. What about that 27% number? It's over twice the circuit's threshold. Why doesn't that support the district court's determination regarding actual confusion? Your Honor, it is a factor that it's supporting. We were not really, to be honest, surprised necessarily about the 27% because we acknowledge that there is a strong association of iPad with the Apple tablet computer. We believe that that survey evidence, if you look at it carefully, that's what it says. It says, yes, we know Apple has iPad as a tablet computer, but what they weren't allowed to know was, did you know that Apple wasn't the first to use iPad? Did you know that Apple does not brand its cloud storage service as iPad? These are other questions that should be presented. That's why they're the factors for likelihood of confusion. This was a strong survey in their defense. We acknowledge that, but we think that what it really shows is what we already know, and as Judge Gregory mentioned, we know what iPad is. We believe the consumer public does. Could I ask your last question? And that's with regard to the Fujitsu mark. Your opposing counsel just says you simply threw in the towel on that, that you never challenged it and you've waived the point. How do you respond to that? Well, the Fujitsu mark was purchased by Apple in 2010 or so, and as a result, after some dispute, I guess, some short opposition proceeding. Right, because the mark goes back to 2000, what, 2002 or 2003? And your opposing counsel, Ms. Sandali, is saying that you've just not said anything on that, and she's saying it's very important, so I'd kind of like to hear your response on that. Sure. We've not thrown in the towel at all, because it's as I said before. First of all, the recognition as for a good, the fact that it acquired secondary meaning for this particular computer product does not mean that that recognition gets transferred to cloud storage services. If they want to have that happen, if they want that legal ruling, they have to prove that it had secondary meaning or they had recognition that got transferred to cloud storage services and they have to prove when it happened. They didn't do that. So, as far as we're concerned, this is nothing more than an extension of saying we have priority of rights into using iPad for a tablet computer, but we're not trying to shut down the use of tablet computers. We're not suing for infringement, none of that. So the fact that it's a priority, but it's what it's a priority for. It's a priority for a computer product with no evidence that any recognition of rights was transferred to cloud storage services at which RxD began offering first using iPad as part of its iPad.mobi platform. All right. Thank you. Well, thank both counsel of your presentation and sorry that we cannot engage in our normal practice of coming down to shake your hand. But please know that our appreciation is nonetheless heartfelt and thank you so much for engaging us and helping us resolve these legal issues. With that, I'll ask the clerk to adjourn court, sign a die. Thank you. Sign a die. God save the United States and this honorable court.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd